## Commonwealth v. Hegland

C. *Gregory Frantz, Assistant District Attorney,* for Commonwealth.
*Paul T. Teacher,* for defendant.

COFFROTH, *P.J.,* November 2, 1976 — This opinion accompanies our decision of October 18, 1976, finding defendant not guilty in his nonjury trial for operating under the influence.

The issue in the case is the admissibility of the breathalyzer test result (.16); without that proof, the evidence as a whole was equivocal and did not establish beyond a reasonable doubt that defendant was under the influence. Therefore, exclusion from evidence of the test result was fatal to the prosecution.

Evidence of the test result was excluded because the Commonwealth failed to comply with the statutory requirement that the testing officer be *qualified* in the use of the breathalyzer Model 1000 by which defendant was tested.

The statutory requirement is contained in section 624.1(a) of The Vehicle Code of April 29, 1959, P.L. 58, as amended, 75 P.S. §624.1a, which provides, in relevant part, as follows:

"Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered

by *qualified personnel and with equipment approved by the secretary* at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. *Qualified personnel means* a physician or *a police officer who has received training in the use of such equipment in a training program approved by the secretary.*" (Emphasis supplied.)

At the trial, the Commonwealth produced the following evidence:

(1) Certificate by the Secretary of Transportation dated November 5, 1970, containing the provisions of Departmental Regulation 100. Part I, section 4(1), thereof lists the kinds of equipment (Type "A") approved for administering chemical tests of breath to determine blood alcohol content; subparagraph (e) of section 4(1) provides as follows: "(e) Breathalyzer - Model 800 - Model 900"

(2) A certificate by the Pennsylvania State Police Commissioner, dated November 13, 1970, that the testing officer (Marlin G. Miller, PSP) successfully completed a course of instruction approved by the Secretary of Revenue (now Secretary of Transportation) based upon "Course 'A'."

(3) A certificate by the Secretary of Transportation, containing amendments to Departmental Regulation 100 and showing that Part I, section 4(1)(e) thereof was amended to read as follows: "(e) Breathalyzer - Model 800 - Model 900 - Model 900a - Model 1000." This certificate is dated April 4, 1974, and states that the amendment is effective May 19, 1973.

(4) Both equipment certificates contain the following provision in Part II, section 9(2) thereof,

providing for additional courses of instruction for use of equipment other than that listed in Part I, section 4(1) thereof:

"(2) Persons successfully completing Course 'A' shall be qualified to operate only such 'A' type equipment, set forth in Part I, Section 4, paragraph (1) of this Regulation, in which such person actually received training during the course of instruction. Such person may subsequently qualify to operate any other 'A' type equipment, identified by trade name, by successfully completing a minimum of 12 hours of instruction in its operation, including interpretation of chemical findings. In any case, instruction may be given by the manufacturer of the equipment or by a representative thereof, or by a competent instructor approved by the Secretary of Transportation."

The missing link in the Commonwealth's case is that no proof was offered to show that the testing officer took an approved course in the breathalyzer Model 1000 as provided in section 9(2), supra. The officer's certified training under Exhibit C, supra, qualified him only on Models 800 and 900. The officer testified that in 1974 he took a State Police supplemental course in the Model 1000, which was not given by "the manufacturer of the equipment or by a representative thereof"; he was unable to testify whether the State Police instructor had been approved by the Secretary of Transportation as required in section 9(2), supra; moreover, he could not say that the course was an approved course and no certification that he completed an approved course in the Model 1000 was presented.

At the trial, the Commonwealth seemed confident that the required certification could be ob-

tained if time were given; consequently, rather than allow the Commonwealth to be defeated on the basis of such an inadvertent omission, we overruled a demurrer, reserved a ruling on the admissibility of the breathalyzer test result, and (over the vociferous objection of defense counsel) granted the Commonwealth a continuance with leave to reopen its case to furnish the missing evidence of the officer's qualification: See Commonwealth v. Johnson (no. 2), 31 Somerset 196, 206 (1975). At the continued hearing, the Commonwealth informed us that the missing certification could not be produced. Apparently, the supplemental course taken by the testing officer in the Model 1000 was not an officially approved course. Instead, the Commonwealth took the position that the breathalyzer Model 1000 was not so different from the breathalyzer Models 800 and 900 as to require an additional training course.

We then ruled the breathalyzer test result inadmissible and, having heard the whole case on the merits including the defense evidence, and the evidence as a whole without the breathalyzer result being insufficient to convict, the verdict of not guilty was rendered.

The statute makes it clear that, in a prosecution for driving under the influence based on a breathalyzer, proof that the equipment was approved and that the operator was qualified are essential preconditions to admission of a breathalyzer test result. Both of these elements may be proved by official certifications: Commonwealth v. Mitchell, 31 Somerset 309 (1976); Commonwealth v. Thompson, 27 Somerset 241, 251 (1971); compare Commonwealth v. Slider, 229 Pa. Superior Ct. 93, 323 A. 2d 376 (1974). The Commonwealth has

clearly proved that the equipment used here (breathalyzer Model 1000) was approved equipment. Missing is proof that the testing officer was qualified in the use of that equipment.

We cannot accept the Commonwealth's contention that the officer's approved training in breathalyzer Models 800 and 900 also qualified him in the Model 1000. It may be that the differences between the Model 1000, and the prior Models 800 and 900 (in which the officer was fully qualified), are not great enough to justify requiring an additional course of instruction on the later model, as the Commonwealth contends and as the officer testified. But the court has no authority to decide whether such a course is essential. We are bound by the regulations in evidence, and by the statute.

The regulations above quoted plainly state the course "A" which this testing officer had in 1970 qualified him only to operate the type of equipment set forth in Part I, section 4, paragraph (1) of Exhibit A: Models 800 and 900; and that to be qualified to operate any other breathalyzer equipment, an additional course is necessary. There is simply no way in which the language of section 9(2) of Part II, supra, can be interpreted as dispensing with the additional training course.

The same result necessarily follows from a reading of the statute, quoted earlier in this opinion. The statute says that the test must be "administered by qualified personnel and with equipment approved by the Secretary." It then defines "qualified personnel" as "a physician or a police officer who has received training in the use of *such equipment* in a training program approved by the Secretary." (Emphasis supplied.) "Such equipment" refers back to "equipment approved by the Secretary."

Therefore, the approved course of instruction even under the statute must be in the use of the approved equipment. The approved equipment in this case being the Model 1000, the approved training must be in the Model 1000. In this case the officer lacked such training, making the breathalyzer test result inadmissible.

The Commonwealth is in no position to disavow significant distinction between model numbers of the breathalyzer. The distinctions are grounded upon the actions of the Secretary of Transportation himself, not on any judicial determination, as the history of departmental certifications shows. Initially, the Secretary's equipment certificate approved the "breathalyzer," without specifying any particular model thereof. In Commonwealth v. Thompson, supra, 245, we held that such a certificate was sufficient approval of any breathalyzer; that decision was affirmed per curiam, 221 Pa. Superior Ct. 824, and allocatur was refused. Later, the Secretary's certification was changed to apply only to breathalyzer Models 800 and 900 (Exhibit A); later, Models 900a and 1000 were added (Exhibit B). These amended regulations and certificates make inapplicable the reasoning of Thompson, supra, which approved any breathalyzer. This change was recognized in Commonwealth v. Mitchell, supra; there we held that where the equipment certificate specifies only certain breathalyzer models, the Commonwealth must prove that an approved model was used in testing defendant and that failure to do so renders the test result inadmissible. The same reasoning requires that the testing officer's qualification in the use of the specific model of breathalyzer employed in testing defendant, be properly evidenced by training in an approved course on that model.

We are not dealing here with judicially created technicalities, with which we are unsympathetic. See Commonwealth v. Schlotthauer, 27 Somerset 376, 61 D. & C. 2d 170 (1972). It is for that reason that we gave the Commonwealth a lengthy continuance, with leave to reopen its case to supply the missing evidence, after the Commonwealth and defense had both rested. What we are dealing with here are requirements of statute and of administrative regulations adopted pursuant to statute, which are binding upon us and all parties.

What we said in Commonwealth v. Hostetler, 29 Somerset 3, 6 (1973), and Commonwealth v. Firestone, 30 Somerset 142, 144 (1974), is pertinent here: "If the Commonwealth expects to sustain its enforcement powers, it must meet its legitimate burdens of proof when the application of those powers is judicially challenged."